Filed 9/10/21  Gettel v. Paetkau CA6
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| STEPHEN W. GETTEL, | H047552 |
| Plaintiff and Appellant, | (Santa Cruz County Super. Ct. No. 18CV02355) |
| v. | |
| TYLER M. PAETKAU, | |
| Defendant and Respondent. | |
| STEPHEN W. GETTEL, | H047553 |
| Plaintiff and Appellant, | (Santa Cruz County Super. Ct. No. 18CV02356) |
| v. | |
| JOHN M. SAICH et al., | |
| Defendants and Respondents. | |

Respondents John M. Saich and his daughter Nichole L. Saich (hereafter the Saiches), represented by Attorney Tyler M. Paetkau (also a respondent here and, with the Saiches, collectively respondents), filed suit against appellant Stephen W. Gettel in Santa Clara County Superior Court.  Gettel in turn filed suit in Santa Cruz County Superior Court against the Saiches for abuse of process and petitioned the Santa Cruz County Superior Court for permission to file a cause of action against Paetkau for attorney client

civil conspiracy. Respondents responded to the Santa Cruz County Superior Court actions with anti-SLAPP motions,[1] which the trial court granted in separate orders. Gettel appeals both anti-SLAPP orders. For the reasons explained below, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

A. *Factual Background and the Santa Clara County Lawsuit*

In 2017, the Saiches, represented by Attorney Paetkau, filed suit against appellant Gettel in Santa Clara County Superior Court, case No. 17CV314350 (Santa Clara County lawsuit). The Saiches alleged Gettel breached oral agreements and committed various torts related to business and financial dealings they had with him and sought damages and injunctive relief.

Regarding venue, the Saiches' complaint described all parties as residents of Santa Cruz County but asserted that venue in Santa Clara County was proper because "the Parties' oral agreement required performance in this County and a substantial number of Defendants' wrongful acts, omissions, and failures to perform occurred in this County."[2]

B. *Santa Cruz County Superior Court Lawsuits*

During the pendency of the Santa Clara County lawsuit, Gettel initiated in Santa Cruz County Superior Court two lawsuits, one against Paetkau[3] (Santa Cruz County Superior Court case No. 18CV02355) and one against the Saiches (Santa Cruz County Superior Court case No. 18CV02356).

---

[1] "An anti-SLAPP motion seeks to strike a '[s]trategic lawsuit against public participation,' that is, a 'SLAPP.' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 882, fn. 2.)

[2] These appeals involve rulings made by the Santa Cruz County Superior Court under the anti-SLAPP statute. As we conclude, the procedural events in the Santa Clara County lawsuit are immaterial to our analysis of Gettel's claims on appeal, we do not provide further detail on them here.

[3] The petition also named one of Paetkau's associates. During the trial court proceedings, Gettel voluntarily dismissed the associate, and she is not a party in these appeals.

2

In his lawsuit against the Saiches, appellant filed a complaint alleging a single cause of action for abuse of process. The operative amended complaint, titled "Verified First Amended Complaint for Monetary Damages for Abuse of Process" (complaint), alleged the Saiches improperly filed the Santa Clara County lawsuit in the wrong venue. The complaint asserted the Saiches filed the Santa Clara County lawsuit "for the ulterior purpose of increasing the legal defense costs of [appellant] by requiring his Santa Cruz County attorney to travel to Santa Clara County in order to litigate [the Santa Clara County lawsuit], plus whatever 'home court advantage' might be had by the utilization of Santa Clara County-based counsel of [the Saiches], such as greater familiarity with the judges of Santa Clara County and of the local practices of Santa Clara County." Gettel sought damages against the Saiches, including punitive damages.

As to Paetkau, Gettel submitted a verified petition under Code of Civil Procedure section 1714.10[4] (petition) to the Santa Cruz County Superior Court requesting to file an amended complaint alleging that Paetkau conspired with his clients, the Saiches, to commit abuse of process by bringing the Santa Clara County lawsuit in the wrong venue. According to the petition, Santa Clara County was an improper venue for the Saiches' lawsuit, and the Saiches, along with Paetkau, maliciously filed the lawsuit to burden appellant and his Santa Cruz County-based counsel. The petition further alleged that Paetkau had written a pre-lawsuit demand letter (sent a few days before the complaint was filed in the Santa Clara County lawsuit) that requested Gettel deliver certain papers and property to Paetkau's office in Santa Clara County, and that this demand was a "sham device to pretend venue lay in Santa Clara County."

Gettel did not serve his petition against Paetkau. According to a case management statement filed by Gettel in April 2019, Gettel had not served Paetkau because the Saiches in the "related" case were "likely to demur to First Amended Complaint" and

---

[4] Unspecified statutory references are to the Code of Civil Procedure.

3

"Paetkau's liability may be dependent upon ability of Plaintiff to state cause of action against [the Saiches] in related Santa Cruz case." He further stated "Petitioner believes Respondent Paetkau should [b]e spared litigation unless and until Plaintiff prevails on demurrer against Defendant in related Santa Cruz case. Respondent Paetkau is aware of existence of Petition and thus is not prejudiced from preserving any evidence by delay in service."

According to a declaration submitted by Paetkau in the Santa Cruz County Superior Court proceeding, Paetkau's "office learned of the filing of the Complaint and petition in October 2018, when [Gettel's counsel] served our office with an '*ex parte* application to accomplish filing of petition.' " In response to the petition, Paetkau retained his own counsel who appeared on his behalf, including at two case management hearings in Santa Cruz County Superior Court, and filed an anti-SLAPP motion on his behalf. Gettel never effected service on Paetkau prior to the anti-SLAPP rulings at issue here.

C. *Anti-SLAPP Motions*

In response to Gettel's actions in Santa Cruz County Superior Court, Paetkau and the Saiches separately filed anti-SLAPP motions. (§ 425.16, subd. (b)(1).)

1. The Saiches' Anti-SLAPP Motion and Related Submissions

The Saiches filed an anti-SLAPP motion in June 2019. The motion contended that the complaint's single cause of action for abuse of process arose from protected activity and that Gettel could not prevail on that cause of action because the litigation privilege (Civil Code §section 47, subdivision (b)) barred his claim. Their anti-SLAPP motion was accompanied by the declaration of respondent Paetkau. Paetkau stated he was counsel of record for the Saiches in the Santa Clara County lawsuit and described various events in that lawsuit as well as the instant Santa Cruz County Superior Court case. His declaration attached various court documents from the Santa Clara County lawsuit and correspondence.

4

In response to the Saiches' anti-SLAPP motion, Gettel filed an opposition and also submitted a declaration from his counsel, Kathleen Wells. Gettel did not submit his own declaration. Gettel's memorandum of points and authorities supporting his opposition raised various claims, including that the Santa Clara County Superior Court—rather than the Santa Cruz County Superior Court—had "primary jurisdiction to determine the issue of venue" and therefore the Santa Cruz County Superior Court should "dismiss the anti-SLAPP motion as an abatement" to allow the Santa Clara County Superior Court to address the issue of venue.

### 2. Paetkau's Anti-SLAPP Motion and Related Submissions

Paetkau filed his own anti-SLAPP motion in August 2019. The motion was accompanied by the declaration of his counsel, Maureen Harrington, which attached court documents, including the complaint filed in the Santa Clara County lawsuit. Paetkau also submitted his own declaration in support of his anti-SLAPP motion that noted "[n]o service has been effected upon me for any actions filed by [appellant] in Santa Cruz County Superior Court." The motion likewise noted the lack of service on Paetkau.

In response to Paetkau's anti-SLAPP motion, Gettel filed a two-page written opposition. His opposition purported to "incorporate[] by reference" his arguments submitted in his written opposition to the Saiches' anti-SLAPP motion. Additionally, Gettel argued that the anti-SLAPP statute did not apply to special proceedings generally or, in the alternative, to the specific special proceeding against Paetkau. Gettel submitted a declaration from his counsel, Wells. Wells's declaration described events in the Santa Clara County lawsuit and attached various documents including letters from herself to Paetkau regarding the pending Santa Clara County lawsuit. Gettel did not submit a declaration.

5

D. *Trial Court's Orders Granting Anti-SLAPP Motions*

On September 17, 2019, the trial court held a combined hearing on Paetkau's and the Saiches' anti-SLAPP motions. The trial court issued separate written orders granting each motion.

Regarding Paetkau's anti-SLAPP motion, the trial court found Paetkau satisfied his threshold burden under the anti-SLAPP statute of demonstrating that Gettel's "cause of action is one arising from a protected activity" because the challenged activity was the filing of the Santa Clara County lawsuit that was constitutionally protected activity under section 425.16, subdivision (e)(1). Turning to the second step of the anti-SLAPP analysis, the trial court found that Gettel could not meet his burden to show that the challenged claim was legally sufficient and factually substantiated, because Paetkau's act of filing the complaint was privileged under Civil Code section 47, subdivision (b). The trial court also expressly addressed what it referred to as "[Gettel's] argument that this Court lacks jurisdiction to make the determination because the issue of venue is still before the Santa Clara County Superior Court." The trial court found it had jurisdiction given that Gettel had failed to challenge venue in Santa Clara County Superior Court and also had removed from the Santa Clara County Superior Court's calendar his motion to quash service of the summons and complaint and therefore had "waived any objection to venue."

The trial court reached similar conclusions with respect to the Saiches' anti-SLAPP motion. The court found it had jurisdiction over the motion, that the Saiches satisfied their initial burden under the anti-SLAPP statute of demonstrating that appellant's claim arose out of protected activity under section 425.16, subdivision (e)(1), and Gettel could not show a probability of success on the merits of the litigation because his claim was barred by the litigation privilege.

Gettel separately appealed the trial court's orders granting the Saiches' and Paetkau's anti-SLAPP motions. (§ 425.16, subd. (i); Cal. Rules of Court, rule

6

8.104(a)(1)(A); *Reyes v. Kruger* (2020) 55 Cal.App.5th 58, 68.) On its own motion, this court ordered that both appeals be considered together for purposes of oral argument and disposition.

## II.  DISCUSSION

In his appeal pertaining to the Saiches (H047553), Gettel contends the trial court erred under the anti-SLAPP statute because the Saiches failed to establish his lawsuit against them was a SLAPP.  In his appeal of the order granting Paetkau's motion (H047552), Gettel raises similar claims of trial court error and further asserts the "special proceeding" he brought against attorney Paetkau fell outside the scope of the anti-SLAPP statute.

A.  *Anti-SLAPP Statute*

Section 425.16, "commonly known as the anti-SLAPP statute, allows defendants to request early judicial screening of legal claims targeting free speech or petitioning activities." (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 880–881 (*Wilson*).)  The anti-SLAPP statute provides a "procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 (*Rusheen*).)  The anti-SLAPP statute "was designed to . . . provide a 'quick and inexpensive method for unmasking and dismissing' unmeritorious cases." (*Oakland Bulk and Oversized Terminal, LLC v. City of Oakland* (2020) 54 Cal.App.5th 738, 764, italics omitted.)  The anti-SLAPP statute "shall be construed broadly." (§ 425.16, subd. (a).)

Courts evaluate an anti-SLAPP motion in two steps. (*Wilson*, *supra*, 7 Cal.5th at p. 884.)  In the first step, the court examines whether the moving defendant has established " 'that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' " (*Ibid.*)  The defendant's burden in the first step involves making "two related showings.  Comparing its statements and conduct against the statute, it must demonstrate activity qualifying for protection.  (See § 425.16,

7

subd. (e).) And comparing that protected activity against the complaint, it must also demonstrate that the activity supplies one or more elements of a plaintiff's claims." (*Id.* at p. 887; *Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 745, 760 (*Laker*).) "At this stage, the question is only whether a defendant has made out a prima facie case that activity underlying a plaintiff's claims is statutorily protected [citations.], not whether it has shown its acts are ultimately lawful." (*Wilson*, at p. 888.)

Section 425.16, subdivision (e), sets forth four categories of protected activity: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) The moving defendant " 'need not prove that the challenged conduct is protected by the First Amendment as a matter of law; only a prima facie showing is required.' " (*People ex rel. Fire Ins. Exchange v. Anapol* (2012) 211 Cal.App.4th 809, 822.) Additionally, a claim arises from protected activity when that activity underlies or forms the basis for the claim. (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1062.)

If the moving party makes its threshold showing under step one of the anti-SLAPP analysis, in the second step the burden shifts to the plaintiff to demonstrate the merit of the challenged cause of action by establishing a probability of success. (§ 425.16, subd. (b)(1); *Wilson*, *supra*, 7 Cal.5th at p. 884.) "If the plaintiff is unable to demonstrate that his or her claim has at least minimal merit, then the trial court should

8

deem the cause of action a SLAPP and should strike it." (*Laker*, *supra*, 32 Cal.App.5th at p. 760.)

We review de novo the trial court's orders granting the anti-SLAPP motions. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

B. *Order Granting Saiches' Anti-SLAPP Motion*

Gettel principally raises two claims in his challenge to the trial court's order granting the Saiches' anti-SLAPP motion. He asserts that the trial court erred in determining (1) that the underlying activity at issue in Gettel's complaint arose from the Saiches' protected activity, and (2) that Gettel did not meet his burden of establishing a probability of prevailing on his abuse of process claim, including by failing to abate the Santa Cruz County Superior Court proceeding until the Santa Clara County Superior Court determined the issue of venue.

1. Gettel's Factual Allegations

Gettel's abuse of process cause of action centers around the Saiches' filing of the complaint in the 2017 Santa Clara County lawsuit against him. Several paragraphs of Gettel's complaint alleging abuse of process quote from and discuss passages from the Saiches' 2017 complaint. Broadly stated, Gettel alleges that the proper venue for the underlying business dispute was not Santa Clara County but Santa Cruz County, where all parties resided.

Gettel further alleges in his abuse of process complaint that the Saiches knew that Gettel relied on an attorney located in Santa Cruz County. The pleading alleges that the Saiches filed the Santa Clara County lawsuit "for the ulterior purpose of increasing the legal defense costs of [Gettel] by requiring his Santa Cruz County attorney to travel to Santa Clara County in order to litigate [the Santa Clara lawsuit], plus whatever 'home court advantage' might be had by the utilization of Santa Clara County-based counsel of [the Saiches], such as greater familiarity with the judges of Santa Clara County and of the local practices of Santa Clara County."

9

We now turn to the application of the anti-SLAPP statute to Gettel's complaint.

### 2. Arising Under Protected Activity

We first examine whether the Saiches in their anti-SLAPP motion made out "a prima facie case that activity underlying a plaintiff's claims is statutorily protected." (*Wilson, supra*, 7 Cal.5th at p. 888.) The trial court concluded that the Saiches' filing of a lawsuit against Gettel in Santa Clara County Superior Court was protected under section 425.16, subdivision (e)(1) (hereafter section 425.16(e)(1)). Based on our independent review, we agree.

Section 425.16(e)(1) describes as protected activity "any written or oral statement or writing made before a . . . judicial proceeding." (§ 425.16(e)(1).) The California Supreme Court has held that this language is not limited to "an 'issue of public interest.' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 (*Briggs*).) The court stated that "[c]onstruing clauses (1) and (2) of section 425.16, subdivision (e) as lacking such a requirement does not diminish their effectiveness in encouraging participation in public affairs. Any matter pending before an official proceeding possesses some measure of 'public significance' owing solely to the public nature of the proceeding, and free discussion of such matters furthers effective exercise of the petition rights section 425.16 was intended to protect." (*Id.* at p. 1118.)

" ' "[T]he constitutional right to petition . . . includes the basic act of filing litigation or otherwise seeking administrative action." ' " (*Briggs*, *supra*, 19 Cal.4th at p. 1115.)

The California Supreme Court has continued to reaffirm the fundamental principle that filing a lawsuit is protected First Amendment activity under the anti-SLAPP statute. (*Wilson*, *supra*, 7 Cal.5th at p. 888; accord *Bonni v. St. Joseph Health System* (2021) 11Cal.5th 995, 1024 (*Bonni*).) In *Wilson*, the court summarized its prior decision of *Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 739–740, which rejected a claim that the anti-SLAPP statute did not apply to a malicious prosecution action, stating

10

"that the claim arose from the filing of a lawsuit, protected First Amendment activity, was alone dipositive; allegations that the suit was filed without probable cause—or, for that matter, based on a malicious motive—were irrelevant at the first step, and mattered only at the second step." (*Wilson*, at p. 888.)

Gettel contends on appeal that the filing of the Santa Clara County lawsuit was not protected activity under the anti-SLAPP statute. Specifically, Gettel asserts that, though the Saiches' "averment" in their complaint in the Santa Clara County Superior Court that venue was proper is protected, their "activity of filing their lawsuit against [Gettel] in a court of assertedly wrong venue" is not protected. Gettel offers no pertinent authority for this claim, and we conclude it lacks merit.

For purposes of step one of the anti-SLAPP statute, the propriety of the Saiches' conduct is irrelevant. "[A]ny 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise and support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94 (*Navellier*).) Gettel concedes that the "gist" of his action against the Saiches is that they filed the Santa Clara County lawsuit for an improper purpose. Accordingly, the Saiches met their threshold burden of demonstrating that Gettel's complaint in Santa Cruz County superior court targeted activity protected by the anti-SLAPP statute.[5]

Turning to the " 'arising from' test" that forms part of the first step of the anti-SLAPP analysis (*Laker*, *supra*, 32 Cal.App.5th at p. 766), we decide that the Saiches'

---

[5] We do not reach Gettel's contention that the Saiches failed to meet their burden of showing their conduct was protected under section 425.16, subdivision (e)(4). The fourth clause of section 425.16, subdivision (e), is commonly referred to as the "catchall provision." *(FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 144.) We need not analyze that clause here given that we conclude section 425.16, subdivision (e)(1) applies. (See *Navellier*, *supra*, 29 Cal.4th at p. 88 [" 'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e).' "].)

litigation-related activity also satisfies this test. "To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." (*Rusheen*, *supra*, 37 Cal.4th at p. 1057.) Here, the petitioning activity itself (i.e., the Saiches' filing of a complaint against Gettel in Santa Clara County Superior Court) is the alleged wrongdoing targeted by Gettel's suit against the Saiches. (See *Wilson*, *supra*, 7 Cal.5th at p. 890; accord, *Bonni*, *supra*, 11 Cal.5th at p. 1024 [stating "claims that arise out of the filing of a suit arise from protected activity for purposes of the anti-SLAPP statute"].)

Based on our independent review, it is clear that, but for the Saiches' lawsuit in Santa Clara County, Gettel's claim for abuse of process would have no basis. (See *Navellier*, *supra*, 29 Cal.4th at p. 90.) "This action therefore falls squarely within the ambit of the anti-SLAPP statute's 'arising from' prong." (*Ibid*.)

For these reasons, we decide that the Saiches met their prima facie burden demanded by the first step of the anti-SLAPP statute, and the burden therefore shifted to Gettel to demonstrate the merit of his abuse of process claim by establishing a probability of success. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384 (*Baral*).)

### 3. Probability of Success on the Merits

"In the second step of the anti-SLAPP analysis, 'the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken." (*Laker*, *supra*, 32 Cal.App.5th at p. 768.) Furthermore, if the challenged action falls within the litigation privilege, the trial court must grant an anti-SLAPP motion. (See *Rusheen*, *supra*, 37 Cal.4th at p. 1065.) In the anti-SLAPP context, the litigation privilege presents "a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing."

(*Flatley v. Mauro* (2006) 39 Cal.4th 299, 323.) "While the defendants bear the burden of proof on any affirmative defense, [plaintiff] retains the burden to show, under the second step of the anti-SLAPP analysis, that he has a probability of prevailing on the merits of the claim." (*Laker*, at p. 769.)

The Saiches contend that Gettel failed to carry his burden of showing a probability of success because his abuse of process claim is based on activity that is absolutely privileged under Civil Code section 47, subdivision (b). We agree.

Civil Code section 47, subdivision (b) codifies the litigation privilege and provides in part that " '[a] privileged publication or broadcast is one made . . . [i]n any . . . judicial proceeding.' " (*Rusheen*, *supra*, 37 Cal.4th at p. 1057.) "The privilege is a matter of substantive law [citation] and, when applicable, is 'absolute,' because it applies regardless of the communicator's 'motives, morals, ethics or intent.' " (*Mireskandari v. Gallagher* (2020) 59 Cal.App.5th 346, 366.) " ' "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." ' " (*Id.* at pp. 365–366.)

In *Rusheen*, the California Supreme Court decided that an abuse of process cause of action was centered on the privileged, communicative activity of using allegedly perjured declarations of service to procure a judgment. (*Rusheen*, *supra*, 37 Cal.4th at p. 1062.) The court concluded, reversing the appellate court's ruling, that the trial court properly granted an anti-SLAPP motion because it "correctly found that there was no reasonable probability [plaintiff's] abuse of process claim would prevail on the ground [defendant's] allegedly wrongful conduct was privileged (Civ. Code § 47, subd. (b))." (*Id.* at p. 1065.)

Gettel's complaint alleging abuse of process likewise centers on privileged conduct: the Saiches' filing of the Santa Clara County lawsuit. Pleadings and process in

13

a case are privileged under the litigation privilege. (*Rusheen*, *supra*, 37 Cal.4th at p. 1058.) Indeed, Gettel does not dispute that the litigation privilege applies to the underlying conduct at the heart of his abuse of process claim.[6] We decide that Gettel has not established a probability of success on the merits because the absolute privilege of Civil Code section 47, subdivision (b) protects the activity that underlies his complaint alleging abuse of process. Therefore, the trial court properly granted the Saiches' motion to strike Gettel's complaint under section 425.16.

    4. Abatement

In his discussion of the second step of the anti-SLAPP analysis, Gettel argues that he was foreclosed from meeting his burden to show his abuse of process claim had merit (i.e., that venue in Santa Clara County was improper) because the issue of venue was for the Santa Clara County Superior Court to determine, and "the abatement doctrine" prevented him from presenting his contention to the Santa Cruz County Superior Court. Gettel asserts he was put "in a Catch-22" when he was "required to make a showing he was disallowed from making." The Saiches respond, first, that Gettel forfeited this claim by failing to adequately brief the abatement claim on appeal, and, second, that the claim fails on its merits because venue was legally proper in the Santa Clara County Superior Court. We agree with the former argument and therefore need not reach the latter.[7]

---

[6] Appellant cites to the California Supreme Court's decision in *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, which upheld an abuse of process action against a collection agency for its alleged practice of filing actions in multiple improper venues. However, that decision does not assist appellant here, including because — as noted by the California Supreme Court decades later in its own analysis of *Barquis*— *Barquis* did not address the application of the litigation privilege. (*Rusheen*, *supra*, 37 Cal.4th at p. 1059.)

[7] On January 26, 2021, the Saiches filed a request for judicial notice of six orders entered by the Santa Clara County Superior Court including an entry of default filed in January 2019 by the Saiches against appellant and an order issued in September 2020 denying appellant's motion to set aside or vacate the entry of default. Appellant filed an opposition as to three of the items. Because the six orders issued in the Santa Clara

14

" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as [forfeited]." ' " (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 (*Lee v. Kim*).)  In his briefing in this court, Gettel fails to cite to any legal authority that supports reversal of the order here on the grounds of what he refers to as the "abatement doctrine."  Therefore, his contention is "forfeited on appeal." (*Nein v. HostPro, Inc.* (2009) 174 Cal.App.4th 833, 855.)

Even if we were to consider his unsupported argument, it does not compel a reversal of the Santa Cruz County Superior Court's anti-SLAPP order.  "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)  As the Saiches observe, the alleged "Catch-22" was of Gettel's own making, because he decided to initiate the proceedings in Santa Cruz County Superior Court.  Under the circumstances, we decide that Gettel has failed to establish any legal error by the trial court in not abating the Santa Cruz County proceeding.

For these reasons, we affirm the trial court's September 17, 2019 order granting the Saiches' anti-SLAPP motion.

---

County lawsuit are immaterial to our analysis here, we deny the Saiches' request for judicial notice.  (See *Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4 (*Doe*).)

Additionally, on March 8, 2021, appellant filed an unopposed request for judicial notice of 17 documents, two "facts of general knowledge" related to dates in the Santa Clara County lawsuit, and "one fact within the special knowledge of this Court" related to a separate appeal of a subsequent judgment (H048664).  His request notes the documents are immaterial to the issues here but are "interposed defensively" to correct what he asserts are false statements made by respondents.  Because we agree the documents are immaterial to our analysis here, we deny the request for judicial notice. (See *Doe*, *supra*, 42 Cal.4th at p. 544, fn. 4.)

15

C. *Order Granting Paetkau's Anti-SLAPP Motion*

Gettel separately appeals the trial court's order granting Paetkau's anti-SLAPP motion. As he did in his appeal of the trial court's order granting the Saiches' anti-SLAPP motion, Gettel contends the trial court erred in finding Paetkau met his burden of showing protected conduct under section 425.16, subdivision (e) and in ruling on the anti-SLAPP motion while the Santa Cruz County litigation was "subject to abatement" because the question of venue was pending in the Santa Clara County lawsuit. Gettel raises two additional claims specific to Paetkau: (1) the anti-SLAPP statute does not apply to Gettel's special proceeding against Paetkau, and (2) the trial court should not have ruled on Paetkau's anti-SLAPP motion because Paetkau, although he was aware of the proceeding against him, had "not yet been served with process" in the Santa Cruz County litigation. We address these latter assertions first.

1. Application of the Anti-SLAPP Statute to Special Proceedings

Gettel asserts the trial court erred in granting the anti-SLAPP motion because his petition against Paetkau under Civil Code section 1714.10 falls outside the scope of anti-SLAPP law. Gettel contends that the anti-SLAPP statute does not apply to any special proceedings, including those under Civil Code section 1714.10.[8]

"[Civil Code] [s]ection 1714.10 prohibits the unauthorized filing of an action for nonexempt civil conspiracy against an attorney based on conduct arising from the representation of a client that is in connection with any attempt to contest or compromise a claim or dispute. It requires a plaintiff who desires to pursue such an action to first

_____

[8] Under a separate heading in his opening brief, appellant identifies an issue he describes as: "Alternatively, anti-SLAPP motion does not apply to special proceeding in which application is made to Superior Court for leave to add person in statutorily protected class requiring judicial determination prior to naming such person as party defendant in related action." In his reply brief, appellant concedes his argument lacks merit under *Sandlin v. McLaughlin* (2020) 50 Cal.App.5th 805 (*Sandlin*), a case we discuss further, *post*. We accept that concession and therefore do not consider that argument further.

16

commence a special proceeding by filing a verified petition naming the attorney as respondent; the trial court then orders service upon the attorney, who is thereby given the opportunity to appear and contest the petition. If the petition is granted, the plaintiff is permitted to file the complaint in the main action, subject to the attorney's right to appeal the order." (*Berg & Berg Enterprises, LLC v. Sherwood Partners, Inc.* (2005) 131 Cal.App.4th 802, 815.) We agree with Gettel that a proceeding under Civil Code section 1714.10 is a special proceeding. (Civ. Code, § 1714.10, subd. (d).) We independently analyze whether a special proceeding is subject to the anti-SLAPP statute. "The proper interpretation of a statute and the application of the statute to undisputed facts are questions of law." (*Lozada v. City and County of San Francisco* (2006) 145 Cal.App.4th 1139, 1149.)

The anti-SLAPP statute does not contain any provision exempting special proceedings from its purview. The Legislature expressly declared in the statute's preamble that it applies to "lawsuits" and the statute "shall be construed broadly" in light of its goals. (§ 425.16, subd. (a).) Furthermore, subdivision (h) of section 425.16 states that "[f]or purposes of this section, 'complaint' includes 'cross-complaint' and '*petition*,' 'plaintiff' includes 'cross-complainant' and '*petitioner*,' and 'defendant' includes 'cross-defendant' and '*respondent*.'" (Italics added.) This language supports application of the statute to petitions in special proceedings.

*Sandlin*, *supra*, 50 Cal.App.5th at pages 821–822 is instructive. In *Sandlin*, the Fourth District Court of Appeal, Division 3, rejected a claim that the anti-SLAPP statute should not apply to statutorily-expedited writs because the pertinent proceeding under Elections Code section 13313 already provided for an expedited determination and thus there was no reason for an early merits determination under the anti-SLAPP statute. (*Sandlin*, at pp. 821–822.) In rejecting the appellant's argument to the contrary, the court observed, "[i]f the Legislature had wanted to exclude expedited writ litigation from the anti-SLAPP statute, it would have said so. We decline the invitation to create an

17

exception that does not appear in the statute." (*Id.* at p. 822.) Courts have consistently applied the anti-SLAPP statute to special proceedings (see, e.g., *Panakosta Partners, LP v. Hammer Lane Management, LLC* (2011) 199 Cal.App.4th 612, 635 [rejecting claim that anti-SLAPP does not apply to " 'special proceedings' " such as a petition for buyout but concluding the trial court erred on other grounds]), and Gettel has cited no cases holding that the anti-SLAPP statute does not extend to them.

Although Gettel discusses at length the California Supreme Court's decision in *Baral*, that case did not address whether special proceedings are covered by the anti-SLAPP statute. The court in *Baral* did reject, however, a formalistic and unduly restrictive reading of the anti-SLAPP statute, like that which Gettel advances here. As the court stated in *Baral* "When the Legislature declared that a 'cause of action' arising from activity furthering the rights of petition or free speech may be stricken unless the plaintiff establishes a probability of prevailing, it had in mind allegations of protected activity that are asserted as grounds for relief. The targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy. . . . Neither the form of the complaint nor the primary right at stake is determinative." (*Baral*, *supra*, 1 Cal.5th at p. 395.)

We agree with the observation in *Sandlin* that if the Legislature intended to exclude special proceedings from the anti-SLAPP statute, "it would have said so." (*Sandlin*, *supra*, 50 Cal.App.5th at p. 822.) Given the express mandate in the anti-SLAPP statute's preamble that it be applied broadly and that special proceedings are not explicitly excluded from the statute, we decline Gettel's invitation to read the statute as implicitly exempting special proceedings.[9]

_____

[9] Appellant appears to argue the Legislature's use of the word "action" in the anti-SLAPP statute rather than "special proceeding" reflects a legislative intent to exclude special proceedings. We decline to rule as a matter of law that the Legislature intended to restrict the statute by the use of that particular word. Appellant does not cite to any

18

We likewise reject Gettel's arguments that the particular "circumstances" of the special proceeding mandate that the anti-SLAPP statute should not apply as a matter of law. Gettel contends, for instance, that "[t]he only reason the [Civil Code section] 1714.10 special proceeding was even filed was to preserve the statute of limitations" because Gettel anticipated the Saiches would bring a demurrer. Gettel's arguments have no basis in the anti-SLAPP statute, and we decline his invitation to create any such exception.

For these reasons, we decide that the anti-SLAPP statute applies to Gettel's petition against Paetkau.

### 2. Filing of Anti-SLAPP Motion Prior to Service of Process

Alternatively, Gettel contends that the anti-SLAPP statute does not apply to his petition because Gettel did not serve Paetkau with process and, as a matter of statutory construction, there was no lawsuit "against" Paetkau (§ 425.16, subd.(b)(1)). Gettel asserts that "an anti-SLAPP motion can be filed against a plaintiff or petitioner only after the defendant or respondent has [been] served with process in the action." (Bolding omitted.) Paetkau responds that (1) Gettel forfeited this argument by failing to raise it in the trial court and (2) it lacks merit. We agree on both counts.

A party's failure to object to a purported error in the superior court results in a forfeiture of that claim of error on appeal. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. 2.) "[A]ny other rule would permit a party to trifle with the courts by standing silently by, thus permitting the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable." (*In re Urayna L.* (1999) 75 Cal.App.4th 883, 886.)

We agree with Paetkau that Gettel forfeited this argument by failing to raise it in the trial court. In the context of the anti-SLAPP motion at issue, Paetkau—not Gettel—

case law supporting that construction of the anti-SLAPP statute, or even general principles of statutory construction that would compel it.

pointed out that he had not been served and asserted that Gettel had engaged in "dilatancy and a general lack of professionalism towards the court and the litigants." Even though Paetkau raised the lack of service in his anti-SLAPP motion, Gettel did not address that circumstance in his written opposition, let alone argue that this lack of service precluded Paetkau from bringing his anti-SLAPP motion. Gettel asserts that he expressed to the trial court that an "anti-SLAPP motion could not occur prior to the trial court making a preliminary probable cause determination and issuing an order to show cause, which steps were necessary preliminaries to service of a [Civil Code section] 1714 Petition." He does not provide a record citation for his contention and, in any event, we reject Gettel's claim that he preserved his argument by presenting another argument "in different garb with emphasis on slightly different stages of the same process."

Moreover, even if we declined to apply the forfeiture doctrine to Gettel's contention that the anti-SLAPP statute does not apply for lack of service of the petition, we would conclude it is meritless. Section 425.16 does not expressly require a defendant or respondent to have been served before bringing an anti-SLAPP motion to an otherwise operative complaint or petition that names that defendant or respondent.

Gettel cites no statutory or case authority for the proposition that Paetkau was precluded from filing, and consequently the trial court was barred from considering, an anti-SLAPP motion prior to "service of process." Our independent research has likewise identified no such authority. Such a rule does not appear in the statute and under these circumstances "would defeat the anti-SLAPP statute's central purpose of preventing ' " 'SLAPPs by ending them early and without great cost to the SLAPP target.' " ' " (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 328.)[10] We decide that the lack of service of the petition on Paetkau did not defeat application of the anti-SLAPP statute.

---

[10] Appellant argues he did not serve Paetkau to spare him from the burden of litigation. He does not explain the legal relevance of his self-described subjective intent,

20

We turn to the merits of the trial court's order granting Paetkau's anti-SLAPP motion.

### 3. Application of Anti-SLAPP Statute

Gettel asserts that Paetkau failed to meet his burden of showing his conduct was protected under section 425.16, subdivision (e), because the "case falls in category described by [section 425.16, subdivision (e)(4)] and does not involve any matter of general interest." Relatedly, he argues "[t]here is no conceivable way that the selection of a particular Superior Court by [the Saiches] could be deemed to be in 'furtherance' of communication regarding a 'public issue or an issue of public interest.' "

Based on our independent review of the record, we have little difficulty concluding that Paetkau satisfied his initial burden in step one. The record demonstrates Paetkau satisfied his threshold burden of showing the activity underlying the petition was protected under section 425.16(e)(1). The crux of Gettel's claim was that Paetkau conspired with his clients to file a lawsuit in the wrong venue. For the reasons we have previously explained, the filing of a lawsuit is protected conduct (see Section II.B.2., *ante*). (See also *Rusheen*, *supra*, 37 Cal.4th at p. 1056 [protected conduct "includes qualifying acts committed by attorneys in representing clients in litigation"].)

Furthermore, the demand letter sent by Paetkau very shortly before initiation of the Santa Clara County lawsuit that Gettel claims was a "sham device" to create venue in Santa Clara County Superior Court is likewise protected conduct. (See *Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1294 [holding "under the general rule articulated in *Briggs*, [attorney]'s demand letter is a protected speech or petitioning activity under the anti-SLAPP statute"].)

Paetkau was not required—as Gettel appears to suggest—to additionally show his acts were in furtherance of a public issue. As stated in *Briggs*, "inferring a separate

and the California Supreme Court has characterized a plaintiff's subjective intent as irrelevant to the anti-SLAPP analysis. (See *Navellier*, *supra*, 29 Cal.4th at p. 88.)

'public issue' requirement in subdivision (e)(1) and (2) of section 425.16 would result in the anomalous result that much direct petition activity—viz., petition activity connected to litigation that trial courts determine is not focused on an inherently 'public' issue—while absolutely privileged under the litigation privilege codified by Civil Code section 47, subdivision (b) and under the federal and state Constitutions, would not be entitled to the procedural protections of the anti-SLAPP law, even though section 425.16 expressly states the Legislature's intent thereby 'broadly' to protect the right of petition (§ 425.16, subd. (a))." (*Briggs*, *supra*, 19 Cal.4th at p. 1121.)

Furthermore, Gettel does not dispute and our independent review confirms that the Civil Code section 1714.10 proceeding against Paetkau arises from Paetkau's protected petitioning conduct. Here, the petitioning activity forms the core of Gettel's claim that Paetkau conspired with his clients the Saiches to commit abuse of process. (See *Wilson*, *supra*, 7 Cal.5th at p. 890.) Therefore, Paetkau satisfied his burden under step one of the anti-SLAPP analysis.

Turning to step two, Gettel appears to concede in his opening brief that his claim against Paetkau lacks merit, and the trial court correctly decided that he had failed to meet his burden to establish a probability of success. Specifically, Gettel states the Santa Cruz County Superior Court "correctly concludes Gettel did not establish he was likely to prevail in the Santa Cruz action that [the Saiches] (and derivatively Paetkau) had filed the Santa Clara Action in the wrong venue." (Some capitalization omitted.) We accept that concession, particularly in light of our conclusion (see Section II.B.3, *ante*) that the abuse of process claim at the heart of Gettel's conspiracy claim was barred by the absolute litigation privilege.

### 4. Abatement Claim

Gettel contends that the trial court "prematurely" ruled on the anti-SLAPP motion based on what he describes as the "abatement doctrine." We understand Gettel's contention, similar to the abatement claim he raises in the related appeal (see Section

II.B.4, *ante*) to be that the trial court should not have ruled on the anti-SLAPP motion because the issue of proper venue was still pending in the Santa Clara County lawsuit. Paetkau responds that (1) Gettel forfeited his claim by failing to move to stay or abate the proceeding in the Santa Cruz County Superior Court proceeding, and (2) the claim is meritless.

In arguing he did not forfeit the abatement issue, Gettel appears to acknowledge he did not make a motion to stay or abate the proceeding in Santa Cruz County Superior Court, but that he did "raise a particular concern" to that court. We assume without deciding that Gettel adequately preserved this issue for appeal by raising the claim in the trial court.[11] However, we conclude that Gettel nevertheless has forfeited his claim on appeal by failing to support it with citations to any authority. (See *Lee v. Kim*, *supra*, 41 Cal.App.5th at p. 721.)

As in his appeal of the trial court's order granting the Saiches' anti-SLAPP motion, Gettel fails to cite to any legal authority that supports reversal of the order on the grounds that the Santa Cruz County Superior Court should have abated the proceeding. His opening brief includes a lengthy section addressing abatement generally but fails to cite any law that explains the standards for abatement or any law that supports his argument. As Gettel has forfeited the contention of abatement by failing to cite any

---

[11] On February 11, 2021, appellant filed an unopposed request for judicial notice of several documents, including the memorandum of points and authorities he filed in the Santa Cruz County Superior Court in his case against the Saiches (18CV02356). He asserts that the memorandum was incorporated in his case against Paetkau because he "expressly incorporated" the document, and therefore he did not forfeit his argument that the trial court should have stayed the matter or that the matter was subject to abatement. Since we assume here that he asserted this argument in the trial court, we deny the request with respect to that memorandum (see *Doe*, *supra*, 42 Cal.4th at p. 544, fn. 4), which in any event is already part of the record in the other appeal. Additionally, appellant requested we take judicial notice of court filings and orders made in the Santa Clara County lawsuit. We conclude these documents are irrelevant to our determination and therefore deny the request in its entirety. (*Ibid.*)

authority and because we have rejected Gettel's other arguments in support of reversal, we affirm the trial court's September 17, 2019 order granting Paetkau's anti-SLAPP motion.

D. *Attorney Fees*

Gettel notes that the September 17, 2019 orders granted attorney fees to respondents for prevailing on their respective anti-SLAPP motions but does not assert any independent legal error as to those rulings. Gettel's sole basis for challenging the award of attorney fees to Paetkau and the Saiches under section 425.16, subdivision (c), is that the trial court erred in granting their anti-SLAPP motions. "Under section 425.16, subdivision (c), 'any SLAPP defendant who brings a successful motion to strike is entitled to mandatory attorney fees.' " (*S. B. Beach Properties v. Berti* (2006) 39 Cal.4th 374, 379; *Barry*, *supra*, 2 Cal.5th at p. 327.) Because we affirm the trial court's orders granting the anti-SLAPP motions, we also affirm its findings that Paetkau and the Saiches were entitled to attorney fees pursuant to section 425.16, subdivision (c)(1).[12]

## III. DISPOSITION

The September 17, 2019 orders granting respondents' anti-SLAPP motions and awarding them attorney fees are affirmed. Respondents are entitled to recover their attorney fees and costs on appeal pursuant to section 425.16, subdivision (c), in amounts to be determined by the trial court.

---

[12] We do not express an opinion as to the appropriate amount of those attorney fees and costs, which were not specified in the September 17, 2019 orders and are not at issue here.

_____

Danner, J.

WE CONCUR:

_____

Greenwood, P.J.

_____

Grover, J.

**H047552,** *Gettel v. Paetkau*
**H047553,** *Gettel v. Saich et al*.